IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* AMBER HALL, <br><br> Plaintiff/Relator, <br> v. <br><br> LEARNKEY, INC.; JEFF CORUCCINI; DAVID CLEMONS; AND BRIAN TREMELLING, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 2:14-cv-379-PMW <br><br> Chief Magistrate Judge Paul M. Warner |

Pursuant to 28 U.S.C. § 636(c), the parties consented to have Chief United States Magistrate Judge Paul M. Warner conduct all proceedings in this case, including trial, entry of final judgment, and all post-judgment proceedings.[1] Before the court are two motions: (1) Relator Amber Hall's ("Hall") Motion for Partial Summary Judgment[2] and (2) a Cross-Motion for Partial Summary Judgment filed by Defendants LearnKey, Inc., Jeff Coruccini, David Clemons, and Brian Tremelling (collectively "LearnKey").[3]

On April 25, 2017, the court heard oral argument on the motions.[4] At the hearing, Hall was represented by Brett D. Ekins.[5] LearnKey was represented by David L. Elmont.[6] At the conclusion of the hearing, the court took the motions under advisement.[7] Now being fully advised, the court renders the following Memorandum Decision and Order.

---

[1] Dkt. No. 21.
[2] Dkt. No. 30.
[3] Dkt. No. 39.
[4] Dkt. No. 53.
[5] *Id.*
[6] *Id.*
[7] *Id.*

## BACKGROUND

The First Amended Complaint is a declined *qui tam* action brought by Hall, a former employee of LearnKey, who alleges that LearnKey violated the False Claims Act ("FCA") by seeking funding from the United States Department of Veterans Affairs (the "VA") for non-qualifying educational courses.[8] In the First Amended Complaint, Hall claims she worked for LearnKey between February 24, 2014, and March 3, 2014, and that she is "an original source" with "independent knowledge" of LearnKey's FCA violations.[9]

LearnKey provides video training courses to disabled veterans who qualify for benefits under the Vocational Rehabilitation and Employment program, authorized by Congress under Title 38, United States Code, Chapter 31 ("Chapter 31").[10] Under Chapter 31, LearnKey submits invoices to the VA for the payment of costs and expenses associated with LearnKey's courses.[11] On September 1, 2011, LearnKey was approved by the VA to be a provider of "Online Expert-Computer Applications" under Chapter 31.[12]

LearnKey does not enroll veterans in its courses.[13] Under the umbrella of Chapter 31, the Secretary of the VA is tasked with formulating an "individualized written plan of vocational rehabilitation" for eligible veterans. 38 U.S.C. § 3107(a). Accordingly, the VA works directly with an eligible veteran to select which LearnKey courses will meet the veteran's particular needs.[14]

---

[8] Dkt. No. 15.
[9] *Id.* at ¶¶ 1, 10.
[10] Dkt. No. 17 at ¶ 11.
[11] *See* Dkt. No. 31, Ekins Dec. at ¶¶ 6–7; Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 3.
[12] Dkt. No. 31, Ex. H. Hall's Exhibit H was received by the court without objection during oral argument on April 25, 2017.
[13] Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 3. Hall does not dispute this fact. *See* Dkt. Nos. 30, 43, 44, 51.
[14] Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 3.

Unlike a traditional school course, LearnKey's courses do not involve live in-class instruction and do not require the course to begin on a specified date. LearnKey's Veteran Services Course Catalog itemizes courses offered by LearnKey.[15] Generally, LearnKey's courses involve online video instruction and allow a student to choose when to begin the course.[16] Once the student begins the course, LearnKey requires that the course be completed by a particular date and provides the student with performance milestones.[17] If the student "falls behind in the course schedule and the delay is not promptly corrected, disciplinary action is taken which includes the discontinuance of VA stipend payments to the student and ultimately prevents the student from receiving credit for the course."[18]

Some of LearnKey's courses prepare students to take tests administered by professional or trade organizations for certification.[19] Once the student completes LearnKey's course, LearnKey arranges for the student to take the test for certification with the professional or trade organization.[20] Conversely, where a particular field lacks a professional certification, LearnKey provides the student with a certificate demonstrating the skills they mastered during LearnKey's course.[21]

The parties dispute how LearnKey's employees are compensated. LearnKey claims that it "does not pay commissions based on the sales of its courses, nor does it invoice commissions to the VA."[22] LearnKey contends that any incentive-based pay is factored into LearnKey's

---

[15] Dkt. No. 31, Exs. D and E.
[16] *See id.*
[17] Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 2.
[18] *Id.* at 4 (citing Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 2).
[19] Dkt. No. 52, Ex. A, Tremelling Dec. at ¶ 2.
[20] *Id.* at ¶¶ 2–3.
[21] *Id.*
[22] Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 3.

tuition costs and, therefore, LearnKey does not directly charge the VA for employee incentives.[23] Hall, however, argues that LearnKey's invoices demonstrate that LearnKey routinely billed the VA for employee commissions in violation of Chapter 31 regulations.[24] For example, Hall relies on a LearnKey invoice for Mr. Steven Boyd ("Boyd Invoice") wherein LearnKey charged the VA $675 for "[m]oney towards incentives, in house lunches, misc expenses, etc. A+ Cert 2012 Crs-OL."[25]

## STANDARDS OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating a motion for summary judgment, the court reviews the facts in a light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015). "In considering the parties' competing motions for summary judgment, the court treats each motion separately, drawing all reasonable inferences against the party whose motion is under consideration." *Morden v. XL Specialty Ins.*, No. 2:14-cv-0224, 2016 WL 1337252, at *3 (D. Utah Apr. 5, 2016) (citing *Mascon v. United Parcel Serv. Inc.*, 743 F.3d 708, 712 (10th Cir. 2014)). "[T]he plain language of [Rule 56(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[23] *Id.*
[24] Dkt. No. 31, Exs. F and G.
[25] *Id.* at Ex. F.

4

**DISCUSSION**

The FCA imposes civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim [to the government] for payment or approval." 31 U.S.C. § 3729(a)(1)(A). The FCA permits *qui tam* actions, which allow an individual plaintiff to sue on behalf of the government. Once a *qui tam* action is filed, the government may intervene and take over the plaintiff's case. *Id.* § 3730(b). If the government declines to intervene, the plaintiff or "relator" may proceed while sharing any recovery with the government. *Id.* § 3730(c)(3). In this case, on August 3, 2015, the government declined to intervene; therefore, Hall is proceeding as a relator under the FCA.[26]

Under Chapter 31, the Secretary of the VA is responsible for formulating an "individualized written plan of vocational rehabilitation" for eligible disabled veterans. 38 U.S.C. § 3107(a). There are six types of courses that qualify for Chapter 31 funding. Relevant here, LearnKey argues that its courses qualify as "school course[s]" pursuant to 38 C.F.R. § 21.122.[27]

Section 21.122(a) broadly defines a "school course" to include "public or private school, secondary school, vocational school, correspondence school, business school, junior college, teacher's college, college, normal school, professional school, university, scientific or technical institution, or other institution furnishing education for adults." Furthermore, a "school course" generally

> consists of a number of areas of subject matter which are organized into learning units for the purpose of attaining a specific educational or vocational objective. Organized instruction in the units comprising the course is offered within a given period of time and credit toward graduation or certification is generally given.

38 C.F.R. § 21.122(b).

---
[26] Dkt. No. 6.
[27] Dkt. No. 38 at 8.

Importantly, it is not enough for the course to meet the regulatory definition of "school course." The VA is tasked with determining whether a course meets the requirements of Chapter 31 and the VA must approve the course for Chapter 31 funding. *See id.* § 21.292(a) & (b). To determine whether a course meets the requirements of Chapter 31, the VA may rely on a number of resources, including: state approval agencies, the Department of Labor, or nationally recognized accrediting associations. *See id.* § 21.292(c)(1).[28] In addition to VA approval, any tuition charged to the VA "may not exceed that charged to similarly circumstanced nonveteran students" and if "the contractor has more than one standard charge for the same service, the charge to [the] VA must be the lowest price that is offered or published for the entire course, semester, quarter, or term." 48 C.F.R. § 831.7001-1.

Hall argues that LearnKey violated the FCA in two ways. First, Hall claims that LearnKey's courses do not qualify for Chapter 31 funding because LearnKey's courses are not offered in a "given period of time" and some of LearnKey's courses do not offer credit toward "graduation or certification."[29] Therefore, according to Hall, every time LearnKey submits an invoice for reimbursement to the VA, LearnKey is violating the FCA. Second, Hall argues that LearnKey violated the FCA by submitting invoices to the VA for employee commissions which are not entitled to Chapter 31 funding.[30]

In response, LearnKey argues that Hall fails to offer any evidence demonstrating that LearnKey knowingly engaged in fraudulent activity.[31] LearnKey further argues that any dispute

---

[28] At oral argument, without legal or factual support, Hall's counsel speculated that the VA does not review individual courses. Rather, the VA relies on independent contractors, like LearnKey, to police Chapter 31 eligibility. Hall's premise that the VA carte blanche reimburses courses under Chapter 31 is inconsistent with VA regulations and lacks factual support.
[29] Dkt. No. 30 at 5; Dkt. No. 51 at 2.
[30] Dkt. No. 30 at 7.
[31] Dkt. No. 38 at 2.

6

over Chapter 31 course eligibility is within the sole jurisdiction of the Secretary of the VA.[32] Moreover, even if the court reaches the merits of Hall's claims, LearnKey argues that its courses qualify as "school course[s]" and are eligible for Chapter 31 funding.[33]

At the outset, the court will address LearnKey's argument that the court lacks jurisdiction over this case pursuant to 38 U.S.C. § 511. Under § 511, "[t]he Secretary [of the VA] shall decide all questions of law and fact necessary to a decision by the Secretary under a law *that affects the provision of benefits* by the Secretary to veterans or the dependents or survivors of veterans." (emphasis added). LearnKey exhausted much of its argument claiming that § 511 prohibits the court from reviewing whether the Secretary of the VA improperly approved LearnKey's courses for Chapter 31 funding. LearnKey's argument misses the mark. This is not a case about the Secretary's decision to approve LearnKey's courses for funding. This is a case about whether LearnKey knowingly submitted a false claim to the VA to receive reimbursement under Chapter 31. Section 511 does not impose a jurisdictional bar where the court is not in the position of reviewing the VA's Chapter 31 eligibility determinations, individual or otherwise.

Turning to the merits of Hall's FCA claims, for the reasons that follow, LearnKey's Cross Motion for Partial Summary Judgment is granted and Hall's Motion for Partial Summary Judgment is denied. Accepting the evidence proffered by Hall as true and drawing all reasonable inferences in her favor, the court finds that Hall is not entitled to relief under the FCA.[34] Hall offers no evidence demonstrating that LearnKey misrepresented its course offerings to the VA. LearnKey's Veteran Services Course Catalog accurately describes its course offerings as online courses and the VA routinely approved LearnKey's courses for Chapter 31 funding. Similarly,

---

[32] *Id.*
[33] *Id.* at 8.
[34] Viewing Hall's claims in a deferential light, the court finds that Hall's FCA claims fail as a matter of law. Accordingly, the court will not separately address Hall's Motion for Partial Summary Judgment.

7

aside from bare speculation, Hall offers no evidence that LearnKey's invoices contained false statements in order to obtain compensation for employee commissions. Furthermore, even if the court were look past these deficiencies, Hall fails to offer any evidence satisfying the materiality and scienter requirements of the FCA. Hall may disagree with the VA's approval of LearnKey courses, but Hall's misgivings do not amount to a claim under the FCA.

## I. False or Fraudulent Claim

A defendant's "presentation of a false or fraudulent claim to the government is a central element in every [FCA] case." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (citations omitted). To establish a false or fraudulent claim, a relator may rely on "either a legally or factually false request for payment." *United States ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1168 (10th Cir. 2016) (quoting *United States ex rel. Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163, 1168 (10th Cir. 2010)). In the context of compliance with a regulatory mandate, a false claim may be express or implied. "Express false certification occurs when a government contractor falsely certifies compliance with a particular statute, regulation, or contract term and compliance is a prerequisite to payment." *United States v. The Boeing Co.*, 825 F.3d 1138, 1148 (10th Cir. 2016) (citing *Lemmon*, 614 F.3d at 1168). Conversely, implied false certification "occurs when a government contractor [does not] expressly certify compliance, but knowingly and falsely implies that it is entitled to payment when it submits a claim." *Id.* Implied false certification includes "half-truths" or "representations that state the truth only so far as it goes, while omitting critical qualifying information." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2000 (2016).

The evidence before the court does not demonstrate that LearnKey submitted a false or fraudulent claim for payment or approval by the VA. The VA's approval of LearnKey's courses was not contingent on falsely supplied information or half-truths proffered by LearnKey. Indeed, if LearnKey was presenting its courses in a false light to obtain approval for Chapter 31 funding, Hall may have a cognizable FCA claim. However, LearnKey's Veteran Services Course Catalog does not misrepresent the Chapter 31 deficiencies outlined by Hall. LearnKey's course catalog specifies that LearnKey's courses are online and the number of hours in which a student can expect to complete the course. For example, LearnKey's CompTIA A+ Certification specifies that the course includes: "approximately 25 hours of instructive video, interactive labs, pre-tests/posttests, adaptive test prep program, online student workbook, and two 800 series exam vouchers . . . ."[35] LearnKey further specifies that it will take the student "162 clock hours or 8 weeks" to complete[36] and that the purpose of its CompTIA classes is to prepare a student to take tests for certification administered by a third party.[37] Moreover, the VA routinely enrolled eligible veterans in LearnKey's courses.[38]

Hall may believe that LearnKey's courses are not "school course[s]" entitled to Chapter 31 funding. However, Hall's remonstration is with the VA. The evidence before the court shows that the VA knew what it was funding and, as such, there is no evidence that LearnKey submitted a false claim for payment under Chapter 31.

Hall's commission theory suffers from the same fatal flaw. Hall does not offer any evidence showing that LearnKey submitted false claims for employee commissions to the VA. LearnKey's invoices do not hide the ball. The Boyd Invoice relied on by Hall includes a line

---

[35] Dkt. No. 31, Ex. D at 22.
[36] *Id.*
[37] *See id.* at 17–18.
[38] Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 3.

item charging the VA for "[m]oney towards incentives."[39] Aside from pure guesswork, Hall offers no evidence that "money towards incentives" is really a facade for money intended for employee commission. Ostensibly, if LearnKey wished to deceive the VA into improperly paying commissions, LearnKey surely would not have itemized its charges to the VA and would not have included a line item that, in Hall's words, "sounds a lot like commission."[40] Similarly, without supporting evidence, Hall assumes that the VA is too busy to thoroughly review LearnKey's invoices and, therefore, may have overlooked LearnKey's blatant commission itemization. This is not enough to create liability under the FCA. Facts, not theories and speculation, create FCA liability.

There is no evidence of a falsehood, misrepresentation, or half-truth attributable to LearnKey that caused the VA to unlawfully compensate LearnKey under Chapter 31. Accordingly, Hall's FCA claims fail as a matter of law. While these deficiencies standing alone are sufficient to grant LearnKey's Cross Motion for Summary Judgment, the court will examine the remaining deficits in Hall's FCA claim.

**II. Knowledge and Materiality**

Assuming *arguendo* that LearnKey misrepresented the substance of its courses in order to obtain Chapter 31 funding, Hall fails to satisfy the FCA's rigorous scienter and materiality requirements. The FCA is not an "'all-purpose antifraud statute' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs.*, 136 S. Ct. at 2003 (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)). To violate the FCA, "the submitted claim must be both knowingly and materially false." *Boeing*, 825 F.3d at 1148 (citations omitted). Hall does not attempt to establish that

---

[39] Dkt. No. 31 at Ex. F.
[40] Dkt. No. 43 at 7.

LearnKey acted knowingly or that LearnKey's alleged falsehoods were material to the VA's obligation to pay.

### A. Knowledge

It is not enough for a relator to show the defendant submitted a false claim. The FCA requires that the defendant act "knowingly." 31 U.S.C. § 3729(a)(1)(A). The FCA defines knowingly to mean that the defendant: "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1). To ameliorate concerns of "fair notice and open-ended liability" the Supreme Court emphasized that the FCA's scienter requirement should be strictly enforced. *Universal Health Servs.*, 136 S. Ct. at 2002. Therefore, to survive a motion for summary judgment, a relator must proffer facts demonstrating that the defendant acted knowingly within the meaning of the FCA. *Boeing*, 825 F.3d at 1148.

For instance, in *United States v. The Boeing Company*, the relators argued that Boeing violated the FCA by certifying that an aircraft sold to the government complied with Federal Aviation Administration ("FAA") regulations where certain parts incorporated in the aircraft were noncompliant. *Id.* at 1140. The relators argued that the FCA's knowledge requirement was satisfied because the parts incorporated were so "clearly" in violation of FAA regulations that "anyone at Boeing" knew that incorporating the parts would violate FAA regulations. *Id.* at 1149. Additionally, the relators offered expert testimony demonstrating that the parts used by Boeing were noncompliant with FAA regulations. *Id.* at 1150. Affirming the district court's grant of summary judgment in favor of Boeing, the Tenth Circuit found that the expert evidence was inconclusive because the FAA disagreed with the expert's interpretation of FAA regulations. *See id.* at 1150–51. Furthermore, the Tenth Circuit held that even if Boeing's aircraft did not

comply with FAA regulations, "there are simply no facts in the record supporting the relators' contention that Boeing *knew* about the nonconformities when submitting the claims for payment." *Id.* at 1149 (emphasis in original). The court held, "relators' naked assertions, devoid of any evidence of scienter" could not survive summary judgment. *Id.*

Like *Boeing*, Hall's naked assertions, devoid of any evidence of scienter, cannot survive summary judgment. Hall offers no argument, let alone evidence, demonstrating LearnKey acted knowingly. Indeed, it appears that Hall believes that the knowledge element is simply a given under the FCA. Searching the factual record for any evidence of scienter, the court recognizes that the undisputed facts weigh in favor of LearnKey. As described above, only VA approved courses are entitled to Chapter 31 funding. The substance of LearnKey's courses was accurately outlined in LearnKey's Veteran Services Course Catalog and the VA routinely approved and enrolled veterans in LearnKey's courses.[41] Therefore, assuming LearnKey's courses were noncompliant and that a false record or certification was submitted to the VA, there is no evidence demonstrating that LearnKey acted knowingly.

**B. Materiality**

Although the text of § 3729(a)(1)(A) does not expressly require the false statement to be material to the government's obligation to pay, the Supreme Court held that "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the [g]overnment's payment decision in order to be actionable under the [FCA]." *Universal Health Servs*, 136 S. Ct. at 1996 (interpreting 31 U.S.C. § 3729(a)(1)(A)). The FCA defines materiality to include facts that have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "The materiality standard is demanding." *Universal Health Servs.*, 136 S. Ct. at 2003. A misrepresentation is not material

---
[41] Dkt. No. 31, Ex. H; Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 3.

"merely because the [g]overnment designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the [g]overnment would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* Similarly, materiality cannot be established where the regulatory violation is "minor or insubstantial." *Id.* (citation omitted).

In *Universal Health Services, Inc. v. United States*, relators brought an FCA action against a healthcare provider, claiming that the provider violated Medicaid regulations by misrepresenting the qualifications of its staff. *Id.* at 1997. The Supreme Court clarified the application of the materiality requirement in the context of regulatory compliance. The Court found that it is not enough for the relator to demonstrate that the government "would be entitled to refuse payment were it aware of the [regulatory] violation." *Id.* at 2004. In the context of materiality, the government's "decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Id.* at 2003. A plaintiff can demonstrate materiality by showing "that the defendant knows that the [g]overnment consistently refuses to pay claims . . . based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id.* Equally, "if the [g]overnment pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.*

With this backdrop in mind, assuming *arguendo* that LearnKey's courses are Chapter 31 noncompliant and that LearnKey knowingly submitted false invoices to the VA, Hall fails to demonstrate that LearnKey's misrepresentations were material to the VA's decision to pay. As described above, there is no evidence establishing that the VA's approval of LearnKey's courses was based on falsehoods or misrepresentation. The VA routinely approved LearnKey's courses

for Chapter 31 funding and enrolled students in LearnKey's courses.[42] The VA paid LearnKey for invoices that itemized expenses for "[m]oney towards incentives."[43] Accordingly, the VA's complacency is very strong evidence that the minor regulatory violations alleged by Hall were not material to the VA's decision to reimburse LearnKey under Chapter 31. *See Universal Health Servs.*, 136 S. Ct. at 2003.

As a final note, Hall repeatedly implies that the purpose of her lawsuit is to protect veterans from being taken advantage of by educational providers like LearnKey.[44] There is no evidence before the court that veterans complained about LearnKey's course offerings or that disabled veterans failed to receive any benefit from LearnKey's online courses. Hall merely bolsters her policy argument with speculation in attempt to persuade the court. The court is not swayed. Hall was a LearnKey employee for one week.[45] Hall then filed a lawsuit claiming that a hyper-technical reading of the VA's regulations entitled her to financial reward. This is not the purpose of the FCA and Hall unquestionably fails to persuade the court of her self-proclaimed noble cause.

---

[42] *Id.*
[43] *Id.* at Ex. F; Dkt. No. 38, Ex. A, Tremelling Dec. at ¶ 3.
[44] *See* Dkt. No. 43 (stating that LearnKey's online course structure "hurts disabled veterans, who are in danger of being preyed on by unscrupulous institutions because of their disability, and need protection in the form of course requirements designed to make sure a course is useful and helpful").
[45] Dkt. No. 15 at ¶ 1.

## CONCLUSION

Based on the foregoing, Hall's Motion for Partial Summary Judgment[46] is **DENIED** and LearnKey's Cross-Motion for Partial Summary Judgment[47] is **GRANTED**. The First Amended Complaint only seeks recovery under the FCA. Therefore, this Memorandum Decision and Order disposes of all claims against LearnKey. Accordingly, the Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

Dated this 28th day of April, 2016.

BY THE COURT:

_Paul M. Warner_
Paul M. Warner
Chief United States Magistrate Judge

---

[46] Dkt. No. 30.
[47] Dkt. No. 39.